IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

VICTORIA DIVISION

| | |
|---|---|
| RICHARD JOHN PENA, #1854545 § | |
| § | |
| VS. § | CIVIL ACTION NO. V-13-035 |
| § | |
| TANYA BROWN § | |

## OPINION AND ORDER

Before the Court, with the consent of the Parties, is the Motion for Summary Judgment of Defendant, Tanya Brown; the Motion seeks the dismissal of the only remaining claims asserted against her by Plaintiff, Richard John Pena, in this civil rights action. The Motion has been thoroughly briefed and is ready for disposition. Accordingly, the Court now issues this Opinion and Order.

The Court will not recite the well-established summary judgment standard, however, it will noted that at summary judgment the Court must accept a non-movant's evidence as true and draw all reasonable inference from that evidence in the light most favorable to the non-movant, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and it must avoid making any credibility determinations. Dibidale of La., Inc. v. American Bank & Trust Co., 916 F.2d 300, 307-08 (5th Cir. 1990)

In an nutshell, Brown's version of the facts is that she and four other Victoria Police Officers went to Pena's home on November 6, 2012, in response to an anonymous 911 report of domestic violence. After they arrived the confrontation with Pena continued to

escalate until the officers were forced to restrain Pena, taser him and arrest him for assault on a public servant.

Pena, of course, and his wife Christina, tell a completely different story. According to them, there had been no domestic disturbance and nothing out of the ordinary was occurring when the officers approached the house. Nevertheless, the officers, without probable cause, entered the home, without a warrant or permission, and tried to question Pena. Pena said he did not want to talk and began to walk away, but Brown blocked the doorway. Suddenly, without provocation, the other four officers attacked Pena, threw him to the floor and subdued him. Then, Brown approached them and for no justifiable reason, and despite Pena's clear-cut protestation, zapped him with her taser. Pena was then handcuffed and arrested. He was subsequently charged with assault on a public official, but that charge was ultimately dismissed.

On May 2, 2013, Pena sued Brown for excessive use of force and false arrest. Brown now seeks summary judgment based upon insufficient evidence to support Pena's claims or, in the alternative, qualified immunity.

As the Court told the Parties during the Pretrial Hearing on November 19, 2013, in its opinion, it is almost impossible to grant a Motion for Summary Judgment in a Fourth Amendment use of force case that involves a "swearing match." Even if the Court were to personally find the Penas' version of the facts improbable and "that a recovery is very remote and unlikely," Scheuer v. Rhodes, 416 U.S. 332, 336 (1974), it may not question their credibility at this juncture. Consequently, under the assumption the Penas' factual

2

allegations are true, those allegations can establish a submissible case that Brown's use of the taser on the subdued Pena was unnecessary, unreasonable and excessive under the existing circumstances.  If the jury chooses to believe them, and not the officers, it could find a Fourth Amendment violation.

Ignoring, for the moment, their questionable entry into Pena's home, the officers, like any other citizen, had the right to approach Pena in an effort to ask him questions.  But Pena had a corresponding right to walk away.  United States v. Morin, 665 F.2d 765, 768 (5th Cir. 1982)   When Pena told the officers he had nothing to say and exercised his constitutional right to walk away it clearly sent the objective message that he did not want to speak to them.  Emily Post may not have given Pena high marks in etiquette, but as Pena started to walk away the encounter should have been terminated.  At that point the officers did not possess any specific articulable facts to provide the basis for a reasonable suspicion of criminal activity sufficient to "Terry-stop" Pena. Id.  (citing Terry v. Ohio, 392 U.S. 1, 16 (1968))   Nor did they have personal knowledge, at that moment, to reasonably conclude that Pena had committed or was committing a crime.  United States v. Watson, 273 F.3d 599, 602 (5th Cir. 2001, reh'g denied) (citing United States v. Watson, 423 U.S. 411, 417 (1976)   In the opinion of this Court, a jury could determine that Pena's arrest violated the Fourth Amendment.

The Court does not believe Pena is asserting an independent claim for false imprisonment and, therefore, does not address it.

For the foregoing reasons, it is **ORDERED** that the Motion for Summary Judgment (Instrument no. 23) of Defendant, Tanya Brown, is **DENIED**.

It is further **ORDERED** that Pena's Motion to Strike Brown's Motion for Summary Judgment (Instrument no. 43), in whole or in part, is **DENIED as moot**.

**DONE** at Galveston, Texas, this      25th      day of February, 2014.

_____
John R. Froeschner
United States Magistrate Judge